UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBBIE HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. _____ |
| HENRY LEGAL GROUP, LLP ) | |
| and ) | |
| HEARTLAND LEGAL GROUP, LLC ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S COMPLAINT**

COMES NOW the Plaintiff, Debbie Holmes, and for her Complaint against Defendant Henry Legal Group, LLP (hereinafter "Henry") and Heartland Legal Group, LLC ("Heartland"), and alleges:

**PRELIMINARY STATEMENT**

1. This case arises from Defendants "Henry" and "Heartland" using their status as a law firm to take unfair advantage of a desperate consumer with the singular goal of lining the law firm's pockets rather than helping Ms. Holmes.

2. Defendant, Heartland contacted Plaintiff about credit problems she was having and offered assistance in getting her debt reduced and in repairing her credit. Plaintiff is of limited means, lives on a fixed income, and viewed Heartland's promise of debt reduction and credit repair as an avenue to escaping the debt problems that plagued her and a way to have better credit in the future.

3. Heartland's status as a law firm and commitment to pair Plaintiff with an attorney to assist in the process of reducing her debt provided additional credibility, as Plaintiff reasonably

believed that Heartland would treat her as lawyers are bound to treat their clients—with the client's interests being paramount.

4. Plaintiff misplaced her trust in Heartland and unknowingly Heartland's alter ego Henry, as it entered into an agreement with Plaintiff that placed Heartland's profitability above Plaintiff's interests, extracted unreasonable legal fees from Plaintiff, failed to adequately inform Plaintiff, and purported to have Plaintiff waive important rights should she attempt to seek redress before courts like this one.

5. In short, Plaintiff placed her trust in Heartland which, as a law firm has heightened responsibilities to ensure its clients' goals are met, expectations are clearly communicated, and operations are carried out with the client's best interests at the forefront. Heartland failed Plaintiff on all counts.

6. Plaintiff brings claims against Heartland for breach of fiduciary duty for its failure to place Plaintiff's interests above Heartland's. Heartland failed to reasonably tie the fee it charged Plaintiff to the relief it obtained, did not provide mandated disclosures, and duped Plaintiff into an agreement that purports to have Plaintiff waive valuable rights without adequately explaining to her the impact of such an agreement.

7. As an entity engaged in credit repair, Heartland violated the federal Credit Repair Organizations Act by not providing the required disclosures, and by not providing the mandatory three day right to cancel.

8. Plaintiff also brings claims for legal malpractice against Heartland. Heartland took Plaintiff as a client and committed to reducing her debt, yet it did not. In failing to reduce Plaintiff's debt, Heartland obtained significant payments from Plaintiff without taking the steps necessary to reduce her debts.

9. Plaintiff also asserts claims under Tennessee's Consumer Protection Act, as Heartland made multiple representations as an attorney and debt-reducer that were not true. Heartland made such representations with the knowledge they were not true, and made them with the intent that Plaintiff rely on them.

10. Plaintiff did so rely, causing her to inter into an agreement with Heartland that was not as it was purported by Heartland to be.

## PARTIES

11. Plaintiff is an individual and resident of this District and Division. She is a "consumer" as defined by the Tennessee Consumer Protection Act.

12. Defendant Heartland is a foreign entity organized under the laws of the State of Michigan. Defendant does business in this District and Division by courting consumers like Plaintiff to engage Heartland's services. Defendant Heartland has a principle place of business at 41000 Woodward Avenue, Ste. 350, Bloomfield Hills, MI 48304. Heartland is an assumed name, registered with the State of Michigan, and is in reality the same entity as Defendant Henry Legal Group, LLP.

13. Defendant Henry is a foreign entity organized under the laws of the State of Michigan. Defendant does business in this District and Division by courting consumers like Plaintiff to engage Heartland's services. Defendant Henry has a principle place of business at 41000 Woodward Avenue, Ste. 350, Bloomfield Hills, MI 48304 and may be served with process via registered agent Dennis Williamson at 100 Dekewood Dr., Old Hickory, TN 37138-2162.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions from which Plaintiff's claims arose occurred in this District and Division.

**FACTS**

16. On or about October 2, 2019 Plaintiff received an unsolicited call to her cellphone from a person known only to Plaintiff as "Steven" who stated he was with Heartland Legal Group.

17. The representative said they were calling Plaintiff to "try to help you get out of credit card debt".

18. Plaintiff mentioned that she was "getting eaten up" on interest payments to which the Heartland representative responded: "We can get you out of debt in three and a half years".

19. Plaintiff's only source of income is her Social Security Disability check in the amount of approximately $1398.00 per month.

20. The representative then told Ms. Holmes that she would have to speak to an attorney about the details and this would occur in about three days.

21. Ms. Holmes was excited to get out of debt in three years and agreed to speak with the attorney.

22. About three days later, a person who identified himself as an attorney from Heartland Legal Group called Ms. Holmes.

23. He also promised that Heartland could get Ms. Holmes out of debt in three and a half years.

24. Most importantly, he specifically assured her that, although her credit scores would go down at first, that when she was through the program she would have excellent credit scores, "the best credit score" of anybody around.

25. Plaintiff was excited to get out of debt and excited about improving her credit score.

26. Plaintiff relied on Defendant's representation about her credit score and getting out of debt in making her decision to agree to retain Heartland.

27. The Heartland representative went on to say that he would send a woman to Plaintiff's house with some papers for her to sign.

28. This alleged lawyer never mentioned the word "arbitration" to Ms. Holmes, and never explained that the Heartland retainer would seek to have Ms. Holmes waive her valuable constitutional right as an American citizen to be protected by the American civil justice system.

29. This alleged lawyer also never explained that the Heartland program would require Ms. Holmes to sign a contract with a third-party that would similarly seek to have Ms. Holmes waive her valuable constitutional right as an American citizen to be protected by the American civil justice system.

30. Heartland at all times expected to have Ms. Holmes sign a series of documents that would seek to waive her valuable constitutional right as an American citizen to be protected by the American civil justice system.

31. Heartland at all times knew that asking a client to agree to waive her valuable constitutional right as an American citizen to be protected by the American civil justice system is a material fact that it should disclose to a client.

32. As a legal firm, before Heartland asks a client to sign a document that waives her valuable constitutional right as an American citizen to be protected by the American civil justice system, Heartland is obligated to explain to the client the legal consequences of what it is asking the client to sign.

33. In the two phone calls with Ms. Holmes, Heartland intentionally concealed that it would ask Ms. Holmes to sign two separate contracts that each would waive her valuable constitutional right as an American citizen to be protected by the American civil justice system.

34. After the second call, Heartland sent a mobile notary by the name of Barbara Borel to bring documents for Ms. Holmes to sign.

35. When Borel met with Plaintiff at Ms. Holmes residence on October 9, 2019, Holmes questioned her about a charge of approximately $6,000.00 reflected in the documents.

36. As a mobile notary, Ms. Borel was unable to explain the charges in the documents.

37. As a mobile notary, Ms. Borel was prohibited from providing legal advice to Ms. Holmes about the documents.

38. Ms. Borel called the Heartland representative, "Steven", but he also could not explain charges.

39. Ultimately, based on the promise from Heartland that she would be out of debt in three and a half years and have the "best credit score" of anybody, Ms. Holmes agreed to sign every place that Ms. Borel told her to sign.

40. The documents did not include any three day right to cancel.

41. The documents did not include the disclosures set forth in 15 U.S.C. § 1679c.

42. The documents did include two different arbitration agreements that each purported to waive her valuable constitutional right as an American citizen to be protected by the American civil justice system.

43. One of the arbitration agreements is in a contract that signs Ms. Holmes up for an account with Global Client Solutions, LLC, and required her to give that entity automatic electronic access to her bank account.

44. The other arbitration agreement is in the retainer with Heartland.

45. The arbitration agreement in the retainer with Heartland is unenforceable because it contains an unenforceable provision that limits Ms. Holmes' federal and state statutory rights.

46. That unenforceable provision also infects the delegation clause in the arbitration agreement such that the delegation clause is unenforceable.

47. Ms. Borel never mentioned the word "arbitration" to Ms. Holmes.

48. Ms. Borel never explained that the documents would seek to waive Ms. Holmes's valuable constitutional right as an American citizen to be protected by the American civil justice system.

49. Ms. Borel also presented a document that falsely stated that Ms. Borel had thoroughly reviewed and explained the retainer agreement and answered any questions about it.

50. This false document also implies that a Face to Face Script was presented and a Face to Face Power Point presentation occurred. Neither did.

51. After signing all the documents she was asked to sign, Ms. Holmes looked forward to becoming debt free and began to send the money as agreed.

52. Specifically, the retainer documents stated Heartland would work on resolving six debts, four with brand name credit cards through Synchrony Bank, one with Discovery, and one Haband card.

53. These were the only debts that Heartland was authorized to work on resolving.

54. Plaintiff began having concerns as early as December, 2019 when she called JC Penney to find out why she had not received her JC Penney bill for that month and was told that the account had been turned over to Heartland at its request.

55. Consequently, JC Penney did not send a bill and treated the account as in default.

56. Plaintiff never agreed to turn over control of the JC Penney account to Heartland.

57. Plaintiff later discovered that Heartland had also taken control of a Sears account.

58. These events caused Plaintiff to start questioning what Heartland was really doing for her.

59. On or about the 1st of June, 2020, Plaintiff, concerned that she could not get a clear answers from Heartland about how her payments were being applied to pay off her debts, again called Heartland for an explanation.

60. When Plaintiff questioned why her credit card debts were not being paid off as she had been promised, the Heartland representative informed Plaintiff that she had not gotten to the "window" for that and that she would not for at least another year.

61. This meant that all the credit card accounts had been put in default for lack of payment and that the creditors had placed the accounts for collection.

62. This caused Plaintiff great concern and anguish. When Ms. Holmes told the Heartland representative that her creditors had turned the debts over to collection agencies, the Defendant's representative merely admonished Plaintiff that "they will say anything to get you to pay".

63. Plaintiff also received communication from Discover card that Discover is threatening legal action if Plaintiff does not pay the balance due on the Discover account.

64. When Plaintiff questioned a Heartland representative about this, Plaintiff was told not to talk to or communicate with her creditors.

65. On multiple occasions Plaintiff asked Heartland to send her something in writing showing how her payments were being applied to reduce her credit card debt. Heartland never

complied with Plaintiff's requests and refused to send her any documentation about the application of Plaintiff's payments to her debts.

66. On or about June 1st, 2020 Plaintiff went to Reliant Bank in Clarksville, TN and signed papers to stop Heartland's payment processor, Global Client Solutions, from making automated withdrawals from her account.

67. Plaintiff paid approximately $26 to Reliant Bank for the stop payment on her account.

68. Despite this, on June 19, 2020, money was again withdrawn on by Global Solutions.

69. Plaintiff went back to Reliant Bank and signed and paid for a second stop payment order to prevent Defendant's agent, Global Client Solutions, from withdrawing money from Plaintiff's account.

70. Because of the arbitration agreement in the contract with Global Client Solutions, Plaintiff is prohibited from bringing her claims against it in a court of law regarding its unlawful automatic withdrawal after permission was revoked.

71. Plaintiff, between October 9, 2019 and July, 2020 paid approximately $3,000 to Heartland Legal Group.

72. The unauthorized withdrawal of funds from Plaintiff's bank account on June 19, 2020 left Plaintiff overdrawn and caused Plaintiff to be charged overdraft fees of approximately $165.

73. Defendant's continued withdrawal of funds from Plaintiff's bank account resulted in Plaintiff having to borrow approximately $400 from a family friend in order to be able to pay for food and other necessities.

74. On information and belief, Plaintiff's credit score, before entering into the agreement with Defendant, Heartland Legal Group, was between 707 and 765.

75. On information and belief, Plaintiff's credit score is now approximately 539.

76. Plaintiff was not informed of the extreme drop in credit score that could occur before entering into the agreement with Heartland.

77. Plaintiff would not have entered into the agreement had she been made aware that it would result in such a drastic decrease in her credit score.

78. When Plaintiff applied for a home equity line of credit in early 2020, she was denied because her credit score was too low.

79. Plaintiff has suffered extreme emotional distress as a result of Defendant's actions, including loss of sleep, mental anguish and suicidal thoughts, because as Plaintiff has stated, she "feels ruined" over what has happened.

80. Plaintiff has suffered emotional distress because her family does not understand why she entered into the agreement with Heartland and they think less of her because of this.

81. Plaintiff suffers from anxiety as the result of the unauthorized withdrawals by Heartland's payment processor, Global Client Solutions, LLC and fears they will attempt to withdraw money in the future against her will.

## CAUSES OF ACTION

### COUNT 1 – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

82. Plaintiff incorporates by reference all prior paragraphs as though set forth fully herein.

83. Heartland represented to Plaintiff that it would improve Plaintiff's credit record, credit history, and credit rating.

84. Heartland further committed to Plaintiff that it would provide her advice and counsel that would improve her credit record, credit history, and credit rating.

85. These representations qualify Heartland as a "credit repair organization" as that term is defined in CROA.

86. Despite contracting with Plaintiff to assist with credit repair, Heartland did nothing to even attempt to reduce Plaintiff's unsecured debt.

87. Heartland's contract further violates CROA in that it fails to provide consumers like Plaintiff with three days in which to cancel the contract without penalty. 15 U.S.C. § 1679d.

88. Though Heartland committed to improving Plaintiff's credit record, credit history, and credit rating, Heartland did virtually nothing. Heartland took money from Plaintiff but did nothing to improve her credit.

89. Heartland's statements about improving Plaintiff's credit record, credit history, or credit rating were misleading in that Heartland's real motivation for representing Plaintiff was to earn improper fees for doing nothing. 15 U.S.C. § 1679d.

90. Heartland also violated CROA in that it demanded and obtained payments from Plaintiff's bank account before the three day right to cancel could even start to run. 15 U.S.C. § 1679d.

91. As a result of Heartland's deception and violations of CROA, Plaintiff suffered actual damages including, by way of example only, paying Heartland attorneys' fees for work not accomplished, paying attorneys' fees that were not reasonable, being locked into a contract without the right to cancel in writing, and the failure of Heartland to perform the work for which Plaintiff originally contracted.

92. Due to Heartland's violations of CROA, Plaintiff is entitled to recover the greater of her actual damages or the amounts she paid to Heartland. 15 U.S.C. § 1679g(a)(1).

93. Plaintiff is also entitled to recover uncapped punitive damages "as the court may allow." 15 U.S.C. § 1679g(a)(2)(A).

94. Plaintiff is also entitled to recover her attorneys' fees and costs of suit. 15 U.S.C. § 1679g(a)(3).

## COUNT 2 – BREACH OF FIDUCIARY DUTY

95. Plaintiff incorporates by reference all prior paragraphs as though set forth fully herein.

96. Heartland, a law firm, expressly entered into an agreement by which it would provide "legal services" to Plaintiff.

97. As such, Tennessee law requires that Heartland, among other things, deal with Plaintiff in good faith and with the highest fidelity and, where a transaction with the client benefits the attorney, give the client all the information and advice as would the attorney if the attorney had no interest in the transaction and was advising the client as a neutral.

98. Tennessee law also forbids lawyers like Heartland from charging clients like Plaintiff a fee that is "clearly excessive."

99. Tennessee law also demands that attorneys ensure that their clients understand how fees are to be calculated regardless of whether the contract is in writing.

100. Heartland met none of these requirements, as it duped Plaintiff into a contract that paid Heartland exorbitantly for little or no results.

101. Heartland's contract with Plaintiff committed Heartland to negotiate improved terms for Plaintiff's unsecured credit. Heartland did nothing on that score, taking monthly payment

after monthly payment from Plaintiff's bank account while achieving nothing regarding Plaintiff's unsecured debt.

102. Separately, and by way of different example, Plaintiff was never advised that the contract purported to waive her right to attorneys' fees should she sue Heartland pursuant to a fee-shifting statute like CROA.

103. As a result of Heartland's breach of its fiduciary duties, Plaintiff suffered actual damages including, by way of example only, paying Heartland attorneys' fees for work not accomplished, paying attorneys' fees that were not reasonable, and failure of Heartland to perform the work for which Plaintiff originally contracted.

104. Plaintiff is entitled to recover these actual damages, as well as to have Heartland disgorge to Plaintiff any money she has paid to Heartland as a result of its agreement with Plaintiff.

105. Plaintiff is also entitled to punitive damages because Heartland acted intentionally, fraudulently, maliciously, or recklessly in convincing Plaintiff to enter into a contract with Heartland.

### COUNT 3 – PROFESSIONAL MALPRACTICE

106. Plaintiff incorporates by reference all prior paragraphs as though set forth fully herein.

107. Heartland's agreement with Plaintiff expressly provides for Heartland's commitment to "negotiate improved terms" on Plaintiff's outstanding, unsecured debts.

108. Heartland failed to negotiate any improved terms on Plaintiff's behalf. All Heartland did was take money from Plaintiff's bank account, month after month, with no change to her unsecured debts.

109. Heartland entered into an attorney-client relationship with Plaintiff. In the agreement memorializing that relationship, Heartland took on multiple duties as to Plaintiff.

110. Heartland breached its duties to Plaintiff by doing nothing regarding her unsecured debts.

111. Despite agreeing with Plaintiff to reduce the amount of her unsecured debts, Heartland made no effort to do so.

112. This failure by Heartland fell below the standard of care that a reasonable attorney would have devoted to Plaintiff's debts and negotiating lower amounts.

113. Because Heartland fell below the standard of care, Plaintiff suffered injuries in the form of legal fees paid to Heartland for no work being done or representation goals accomplished.

114. Heartland's failure to meet its duties caused Plaintiff's injuries.

115. Heartland's breach of its duties was the legal and proximate cause of Plaintiff's injuries.

116. As a result of Heartland's breach of its duties to Plaintiff, Plaintiff suffered actual damages, including, by way of example only, paying Heartland attorneys' fees for work not accomplished, paying attorneys' fees that were not reasonable, and failure of Heartland to perform the work for which Plaintiff originally contracted.

117. Plaintiff is also entitled to punitive damages because Heartland acted intentionally, fraudulently, maliciously, or recklessly in convincing Plaintiff to enter into a contract with Heartland.

**COUNT 4 – VIOLATIONS OF THE TENNESSEE CREDIT SERVICES BUSINESS ACT**

118. Plaintiff incorporates by reference all prior paragraphs as though set forth fully herein.

119. Heartland promised that it would improve Plaintiff's credit record, history, or rating as it pertained to credit extended by others.

120. Heartland accepted payments from Plaintiff based on its promises to provide services that would improve Plaintiff's credit record, history, or rating as it pertained to credit extended by others.

121. Heartland qualifies as a "credit services business" as that term is defined in Tennessee Code § 47-18-1002(6)(A). None of the exclusions for the definition of "credit services business" apply to Heartland. TENN. CODE ANN. § 47-18-1002(6)(B).

122. In its role as a credit services business, Heartland violated the Tennessee Credit Services Business Act in at least the following ways:

    a. Charging or receiving any money or other valuable consideration prior to full and complete performance of the services that the credit services business has agreed to perform for or on behalf of the consumer, including all representations made orally or in writing.

    b. Making or using any untrue or misleading representations in the offer or sale of the services of a credit services business or engage, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services business.

    c. Providing, in any manner, the services of a credit services business within Tennessee, without registering a bond consistent with the provisions of Tennessee Code § 47-18-1011.

d. Engaging in any violation of the federal Consumer Credit Protection Act, in this case the federal Credit Repair Organizations Act, as alleged herein.

123. Heartland committed such violations as set forth in the factual discussion in this Complaint.

124. Heartland's violations of the Tennessee Credit Services Business Act were willful, as Heartland made representations regarding the services it would provide Plaintiff and then provided none of those services.

125. Heartland's violations were further willful in that it promised to reduce Plaintiff's credit score and credit liability, then it did not do so.

126. Heartland was aware of the representations it was making to Plaintiff and that it would not meet those representations despite Plaintiff paying Heartland to do so.

127. Heartland's willful violations of the Tennessee Credit Services Business Act entitle Plaintiff to recover the greater of her actual damages or the amounts she paid Heartland. TENN. CODE ANN. § 47-18-1008(a)(1).

128. Plaintiff is also entitled to recover "[s]uch amount of punitive damages as the court may allow." *Id.* § 47-18-1008(a)(2).

129. In the alternative, Heartland's violations were negligent, entitling Plaintiff to recover her actual damages. *Id.* § 47-18-1008(b).

130. Heartland's violations of the Tennessee Credit Services Business Act also constitute a violation of the Tennessee Consumer Protection Act. *Id.* § 47-18-1010.

**COUNT 5 – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT**

131. Plaintiff incorporates by reference all prior paragraphs as though set forth fully herein.

132. Plaintiff entered into a consumer contract with Heartland for legal services in Tennessee.

133. Heartland represented that its legal services would have certain characteristics, including the negotiation of lower amounts of Plaintiff's unsecured debt.

134. The Tennessee Consumer Protection Act prohibits deceptive practices in consumer contracts such as those between Plaintiff and Heartland.

135. Specifically, Heartland violated the TCPA in its agreement with Plaintiff in that Heartland:

   a. Represented to Plaintiff that Heartland's services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have.

   b. Represented to Plaintiff that Heartland's services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

TENN. CODE ANN. § 47-18-104.

136. Heartland's representations to Plaintiff about its services caused Plaintiff to enter into the agreement with Heartland.

137. As a result of Heartland's deception, Plaintiff suffered actual damages including, by way of example only, paying Heartland attorneys' fees for work not accomplished, paying attorneys' fees that were not reasonable, and failure of Heartland to perform the work for which Plaintiff originally contracted.

138. Heartland also incurred liability under the Tennessee Consumer Protection Act by violating the Credit Services Business Act. *Id.* § 47-18-1010.

139. The TCPA entitles Plaintiff to recover her actual damages.

140. Heartland's conduct also entitles Plaintiff to treble damages because Heartland's conduct was willful or knowing.

141. The TCPA also entitles Plaintiff to recover her attorneys' fees and costs incurred.

WHEREFORE, Plaintiff requests that, after a trial on the merits, the Court enter an order:

a. Finding Heartland engaged in the violations alleged herein;

b. Awarding Plaintiff her actual damages as set forth herein;

c. Awarding Plaintiff treble damages as set forth herein;

d. Awarding Plaintiff punitive damages as the Court may allow;

e. Awarding Plaintiff her reasonably incurred attorneys' fees and costs incurred;

f. Awarding Plaintiff all other relief, including equitable relief, as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

      (s) T. Blaine Dixon
**T. BLAINE DIXON, BPR No 026270**
U.S. CONSUMER LAW, PLLC
664 SANGO ROAD
CLARKSVILLE, TN 37043
Cellular: (615)440-3746
blaine@usconsumerlaw.com

Leonard A. Bennett (*pro hac vice forthcoming*)
Craig C. Marchiando (*pro hac vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660
(757) 930-3662 fax
len@clalegal.com
craig@clalegal.com

*Attorneys for Plaintiff*