# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **DEBBIE HOLMES, on behalf of herself** | ) | |
| **and all similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 3:20-cv-00870** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE NEWBERN** |
| **HENRY LEGAL GROUP, LLP and** | ) | |
| **HEARTLAND LEGAL GROUP** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion to Stay and Compel Arbitration or Dismiss for Failure to State a Claim. (Doc. No. 30). Through the motion, Defendant moves to stay this action and compel arbitration pursuant to Sections 2-3 of the Federal Arbitration Act, 9 U.S.C. §§ 2-3, and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), or, in the alternative dismiss Counts 2 and 3 under Rule 12(b)(6) for failure to state a claim. Defendant filed a memorandum (Doc. No. 31), a Declaration from Brandon Chabner (Doc. No. 32), and two exhibits – the client retainer agreement (Doc. No. 32-1) and copies of representative confirmations (Doc. No. 32-2). Plaintiff filed a response in opposition to the motion (Doc. No. 38) and a Declaration from Plaintiff (Doc. No. 38-1). Defendant filed a reply. (Doc. No. 44).

For the reasons discussed below, Defendant's Motion will be **GRANTED**.

## I.     BACKGROUND

Plaintiff Debbie Holmes is a former client of Defendant Henry Legal Group, d/b/a Heartland Legal Group ("Heartland"). Plaintiff retained Heartland to help her get out of debt and improve her credit score. Ultimately dissatisfied with Heartland's legal representation (the merits

of Plaintiff's claims are not the subject of this motion), Plaintiff filed claims on behalf of herself and a putative nationwide class of Heartland clients alleging violations of the Credit Reporting Organizations Act (Count 1), and on behalf of herself and a putative Tennessee class of Heartland clients for alleged violations of the Tennessee Credit Services Business Act (Count 2) and the Tennessee Consumer Protection Act (Count 3). (Am. Compl., Doc. No. 26).

The Client Retainer Agreement between Plaintiff and Heartland contains an Arbitration Agreement. (*See* Doc. No. 32-1). Defendant now seeks to enforce the Arbitration Agreement, compel arbitration, and stay the case.[1] Plaintiff does not dispute that she signed the Retainer Agreement, or that the arbitration agreement, if enforceable, covers the claims in this case.

The Arbitration Agreement requires arbitration of "[a]ny controversy, claim or dispute between Client, on the one hand, and Heartland, any of its attorneys, and/or any of its third-party service providers, on the other hand, arising out of or relating to this agreement or the breach, termination, enforcement, performance, interpretation or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate…" (Doc. No. 32-1 at 20). The Arbitration Agreement waives the right to pursue claims as a class action and provides that Plaintiff and Heartland will share the costs of arbitration equally up to $1,000; amounts in excess of $1,000 will be paid by Heartland. (*Id*.). It further provides that each party will bear their own attorneys' fees and costs. (*Id*.).

The Agreement explains the meaning of arbitration in boldface type as follows:

> ***Binding arbitration means that both Client and Heartland give up the right to a trial by a jury and their rights to have a dispute resolved in a court of law. It also means that both Client and Heartland give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can be***

---

[1]    In the alternative, Defendant requests that the Court dismiss Counts 2 and 3 for failure to state a claim. Count 2 is a claim under the Tennessee Credit Service Businesses Act ("TCSBA"), Tenn. Code Ann. § 47-18-1001 et seq. (Am. Compl., Doc. No. 26, ¶¶ 108-127). Count 3 is a claim under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq. (*Id*., ¶¶ 128-148).

**appealed, that discovery may be severely limited by the arbitrator, and that certain remedies such as statutory injunctions and fee shifting which may be available in a court of law may not be available. In addition, under the terms of this Agreement, Client also gives up the right to bring any claims on a consolidated or class basis in the arbitration.**

(*Id*.). Plaintiff initialed at the end of the Arbitration Agreement. (*Id*. at 21). Just above her initials

is the following notice on boldface type:

> ***NOTICE: This agreement contains provisions requiring arbitration of fee*** **disputes. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration. Please consult with independent legal counsel of your choice prior to signing this Agreement as the Class Action Waiver contained herein affects your rights. Please do not sign this Agreement if you do not understand these limitations.**

In addition, immediately preceding the signature line of the Retainer Agreement, the

Agreement states in boldface type:

> **I represent that I have read, understand and agree to be bound by the terms of this Client Representation Agreement as set forth above and in the documents incorporated in this Agreement. I further acknowledge that the terms and conditions of this Agreement have been explained to my satisfaction by a representative of Heartland and that I have no unanswered questions about the program or this Agreement. I confirm that I agree to arbitrate any claims and to waive any right to bring or participate in a class action against Heartland.**

(*Id*. at 22).

Plaintiff initialed the Arbitration Agreement and signed the Retainer Agreement in the

presence of a non-attorney Heartland representative. Plaintiff states that the representative was

unable to answer her question about a specific monetary charge in the Agreement. (Comp., Doc.

No. 26, ¶ 37-39). Plaintiff does not allege that she asked any other questions that the representative

was unable to answer, but states generally that the non-attorney representative was unable to provide legal advice about the documents. (*Id*.).

The day after she signed the Retainer Agreement, Plaintiff spoke with Brandon Chabner, a Heartland attorney. (Chabner Decl., Doc. No. 32, ¶ 5). Plaintiff did not raise any questions or concerns regarding the Arbitration Agreement at that time. (*Id*.).

Plaintiff states that at the time she signed the Retainer Agreement, she did not understand that she "was being asked to waive [her] right to be protected by the judicial system" and that she did not know she "was being asked to waiver important statutory protections like the ability to recover attorneys' fees under consumer protection laws." (Holmes Decl., Doc. No. 38-1, ¶¶ 3, 4). She states that she was never told that signing the agreement would waive these protections. (*Id*., ¶ 6).

## II.    STANDARD OF REVIEW

Defendant seeks to stay the case and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), specifically, 9 U.S.C. §§ 2-3.[2]   Section 2 provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3, which addresses "motions … in which a *defendant* seeks arbitration of 'any issue' pending in an *existing federal suit*," provides one of the two routes by which a party may invoke arbitration under the FAA. *Boykin v.*

---

[2]    Defendant states that it seeks to compel arbitration under Sections 2-3 of the Federal Arbitration Act, 9 U.S.C. §§ 2-3. However, "in an abundance of caution, [the motion] is also brought under Rule 12(b)(1) and 12(b)(6) [of the Federal Rules of Civil Procedure] because Sixth Circuit courts appear split on whether a motion to compel arbitration falls within the scope of Rule 12, and, if so, which portion of Rule 12 applies." The Court has not considered the motion to compel arbitration under either of these alternatives. *See Boykin v. Family Dollar Stores of Mich., LLC*, No. 20-1153, 2021 WL 2708859, at * 2 (6th Cir. Jul. 1, 2021) (noting that  although there may be some circumstances where a court may consider a motion to compel arbitration using Rule 12(b)(6), a motion to dismiss under Rule 12(b)(6) is not the appropriate procedure when the Court relied upon evidence outside the complaint).

*Family Dollar Stores of Mich., LLC*, No. 20-1153, 2021 WL 2708859, at * 2 (6th Cir. Jul. 1, 2021) (emphasis in original) (citing 9 U.S.C. § 3). Under Section 3, if the court is "satisfied" that the issue involved in the case is referable to arbitration under an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id*. (citing 9 U.S.C. § 3).

The FAA "expresses a strong public policy favoring arbitration of a wide class of disputes." *Walker v. Ryan's Family Steak Houses, Inc*., 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co*., 367 F.3d 493, 498 (6th Cir. 2004)). The Court considers the validity of the agreement to arbitrate separate from the validity of the contract as a whole. *See Arnold v. Arnold Corp-Printed Comm. for Business*, 920 F.2d 1269, 1277-78 (6th Cir. 1990) (citing *Prima Paint v. Flood & Conklin Mfg. Co*., 388 U.S. 395 (1967)) (stating that arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded). While a general challenge to the enforceability of the contract as a whole must be decided by the arbitrator, a specific challenge to the arbitration agreement itself must be decided by the court before it compels arbitration. *See Anderson v. Charter Comm., Inc*., 2021 WL 2396231, at *2 (6th Cir. Jun. 11, 2021) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)).

Whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc*., 144 F. App'x 475, 477 (6th Cir. 2005). In order to show that the validity of the agreement to arbitrate is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id*. Therefore, the Court reviews the facts in the light most favorable to the Plaintiff to determine whether the

evidence presented raises a genuine question of material fact such that a finder of fact could conclude that no valid agreement to arbitrate exists. *Id*. (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999)). Any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)); *see also Great Earth*, 288 F.3d at 889 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.").

Under 9 U.S.C. § 3, where a defendant establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration and stay the proceedings until the completion of the arbitration. *See Boykin*, 2021 WL 2708859, at * 3.[3]

## III.   ANALYSIS

Plaintiff argues that the Arbitration Agreement was obtained by fraud and is unenforceable because Heartland failed to fulfill its fiduciary duty and professional obligation to her as a prospective client to explain the Arbitration Agreement and its consequences "in a manner she could reasonably understand" before she signed the Retainer Agreement with the arbitration provision. (Doc. No. 38 at 12 (citing Tenn. Sup. Ct. Rule 1.4), and 22). As additional grounds for unenforceability, Plaintiff argues that the Arbitration Agreement improperly limits her statutory right to obtain attorneys' fees for successful claims. (*Id*. at 18).

### A.  Validity of the Arbitration Agreement

In determining whether parties agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *Mounts v. Midland Funding LLC*, 257 F. Supp.

---

[3]      A circuit split exists on the question of whether a court has discretion to dismiss a case when a party seeks a stay under 9 U.S.C. § 3. *Boykin*, 2021 WL 2708859, at * 3 (noting that the circuit's unpublished cases have upheld dismissals despite the Section's use of the word "shall").

3d 930, 936 (E.D. Tenn. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In Tennessee, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (internal citation and quotation omitted); *see also*, Restatement (Second) of Contract §§ 17, 22.

These general rules of contract law apply to contract between attorneys and clients. *See Silva v. Buckley*, 2003 WL 23099681, at * 2 (Tenn. Ct. App. Dec. 31, 2003) (citing *Alexander v. Inman*, 903 S.W.2d 686 (Tenn. Ct. App. 1995) ("Alexander I")). However, Tennessee courts subject attorney-client contracts to a higher-level of scrutiny, reflecting the requirement that attorney's deal with their clients in "utmost good faith." *Id.* (citing *Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998) ("Alexander II")). "This level of good faith is significantly higher than that required in other business transactions where the parties are dealing at arm's length." Alexander II, 974 S.W.2d at 694.

Tennessee requires that to enforce a contract with a client an attorney must demonstrate: (1) the client fully understood the contract's meaning and effect, (2) the attorney and client shared the same understanding of the contract, and (3) the terms of the contract are just and reasonable. *Id.*

With regard to the first element, despite Plaintiff's statements to the contrary, there is no plausible basis to conclude that she did not understand that claims arising out of her relationship with Heartland would be subject to arbitration. Indeed, Plaintiff does not claim that she was unaware of the arbitration agreement, only that she did not understand the Arbitration Agreement was waiving her right to be "protected by the judicial system" and the ability to recovery attorney's

fees. Plaintiff argues that she is "unsophisticated" and required assistance understanding the Agreement and "would have no reason to think that such important waivers would be included in a Retainer Agreement without any discussion." (Doc. No. 38 at 16).

Tennessee imposes no requirement to walk prospective clients through the terms of retainer agreements. *See* Alexander II, 974 S.W.2d at 694 ("[T]he failure of one party to explain the terms or a written contract to another is not alone a violation of the fiduciary obligation of good faith, even if the contract is between attorney and client."). Tennessee presumes "[a] party … know[s] the contents of a contract he has signed." *Philpot v. Tenn. Health Mgmt. Inc.*, 279 S.W.3d 573, 581 (Tenn. Ct. App. 2007). Moreover, the "law imparts a duty on parties to a contract to learn the contents and stipulations of a contract before signing it, and signing it without learning such information is at the party's own peril." *Broadnax v. Quince Nursing and Rehab. Ctr.*, 2009 WL 2425959, at * 8 (Tenn. Ct. App. 2009). "If the agreement is clear and unambiguous, the burden is on the client to show that the client did not have the same understanding as the attorney. A simple denial by the client is not sufficient." *Silva*, 2003 WL 23099681, at * 3 (citing Alexander II, 974 S.W.2d at 695)).

Here, the Arbitration Agreement is written in plain language under a bold heading titled "ARBITRATION AGREEMENT." It explains what arbitration is and how it is different from litigation in court – limited discovery, possible lack of fee shifting, no trial by jury, and limited appeal rights. In addition, the Agreement advises Plaintiff to consult with another lawyer before signing the Retainer Agreement, noting that the Arbitration Agreement and class action waiver affect important rights. It states, "Before signing this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements," and "Please consult with independent legal counsel of your choice prior to signing

this Agreement as the Class Action Waiver contained herein affects your rights." (Doc. No. 32-1 at 21, 22). Plaintiff does not claim that she asked questions about the Arbitration Provision before she signed the Agreement; she did not ask to consult an independent attorney; she did not ask for additional time to consider the agreement. Nor does Plaintiff claim that she was pressured to sign the agreement on the spot or otherwise under duress. Moreover, although Plaintiff did not speak with Attorney Brandon Chabner until the day after she signed the agreement, she did not raise any concerns about the Arbitration Agreement at that time and proceeded with the representation.

In light of the plain language of the agreement and Plaintiff's failure to raise any questions or concerns regarding the arbitration provision, the Court cannot find that Plaintiff did not understand the meaning and effect of the contract.

Citing a recent New Jersey Supreme Court opinion, Plaintiff argues that a number of states require attorneys who include arbitration agreements in their retained agreements to explain the advantages and disadvantages of arbitration. (Doc. No. 38 at 12 (citing *Delaney v. Dickey*, 242 A.3d 257, 270 (N.J. 2020)). Plaintiff also notes that in 2002 the American Bar Association issued a formal opinion requiring that clients be fully apprised of the advantages and disadvantages of arbitration and give informed consent to the inclusion of an arbitration provision in a retainer agreement. (*Id*. at 13 (citing ABA Comm'n of Professional Ethics, Formal Op. 02-425 (2002)). The rule, however, is far from universal. *See e.g.*, *Watts v. Polaczyk*, 619 N.W.2d 714, 717 (Mich. Ct. App. 2000) (enforcing arbitration provision in attorney retainer agreement); *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 504-05 (Tex. 2015) (declining to impose requirement that attorneys explain to prospective clients either orally or in writing arbitration provisions in attorney-client employment agreements because clients who enter such contracts are protected to the same extent as other contracting parties from fraud, misrepresentation, or deceit

in the contracting process); *Summerville v. Innovative Images, LLC*, 826 S.E.2d 391, 397 (Ga. Ct. App. 2019) (declining to adopt a blanket rule that an arbitration clause in an attorney-client contract is unconscionable and against public policy if the attorney did not explain the potential disadvantages of the clause to his prospective client before execution of the contract). In any event, the rule Plaintiff advocates has not been adopted by Tennessee. Accordingly, the Court will not impose such a requirement in this case.

There is no dispute that Heartland understood the Arbitration Agreement to require that disputes would be subject to arbitration. Accordingly, the second element is met.

With regard to the final element, whether the terms of the contract are just and reasonable, Plaintiff argues that the provision in the arbitration agreement stating that "each of Heartland and Plaintiff shall bear their own attorneys' fees and costs" improperly curtails her right to obtain the fee-shifting remedy provided for certain her statutory claims. (Doc. No. 38 at 16-19). She also claims that that class action waiver is "unfair," but concedes that courts have upheld class action waivers for many years and makes no argument about the purported unfairness of the class action waiver.

Defendant agrees with Plaintiff that arbitration cannot be used to circumscribe substantive statutory rights, such as fee-shifting, but argues that nothing in the Arbitration Agreement limits those rights. Defendant contends that the provision in the Arbitration Agreement related to fees merely restates the default rule that, absent law providing otherwise, each side bears its own attorneys' fees and costs. Defendant argues that nothing in the Arbitration Agreement limits the power of the arbitrator to award attorneys' fees if provided by statute. (Doc. No. 44 at 8-9 (under the Rules of the American Arbitration Association, the arbitrator may award attorneys' fees and

costs in accordance with applicable law (citing Commercial Arbitration Rules of the American Arbitration Association, Rule 44)).

Defendant does not address the provision of the Arbitration Agreement informing Plaintiff that in arbitration "certain remedies such as … fee shifting which may be available in a court of law might not be available." (Doc. No. 32-1 at 20). This language, however, is not couched in mandatory terms, stating that fee shifting "might not" be available. Nothing in the Arbitration Agreement expressly prohibits the arbitrator from awarding attorneys' fees where such fees are provided by statute.

Given the well-established maxim that courts should resolve any doubts regarding arbitrability "in favor of arbitration," and the Defendant's position that an arbitrator may award attorneys' fees if provided by statute, the Court declines to construe the provision in such a way as to render the entire Arbitration Agreement invalid. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."); *see also Baugh v. Novak*, 340 S.W.3d 372, 384 (Tenn. 2011) (courts "must, if possible, interpret contracts in a way that upholds their validity").

**B. The Arbitration Agreement is Not Unconscionable**

Plaintiff's argument that the Arbitration Agreement is unconscionable is similarly unavailing. Plaintiff argues that the Arbitration Agreement is unconscionable because she "had no meaningful choice but to sign the contract as written," was unable to have her questions answered about the contract before signing it, is less sophisticated than Defendant. (Doc. No. 38 at 21).

The question of whether a contract or contract provision is unconscionable is a question of law. *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004). Under Tennessee law, an agreement is unconscionable where "the 'inequity of the bargain is so manifest as to show the judgment of a persons of common sense, and where the terms are do oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Id*. at 285. "An unconscionable contract is one in which the provisions are so one-sided, in view of all the facts and circumstances, that the contracting party is denied any meaningful choice." *Id*.

Plaintiff's primary arguments with regard to the substantive unconscionability of the Arbitration Agreement are: (1) that it involves an "attorney taking unfair advantage of its client"; and (2) limits her right to obtain attorney's fees. Both of these arguments have been addressed. As stated above, Tennessee has not prohibited attorneys from including mandatory arbitration provisions in their retainer agreements. While it is the case that the Defendant, a law firm, is unquestionably more sophisticated in areas of the law, the Arbitration Agreement they seek to enforce is written in plain language, prominently positioned, and contains an explanation of how arbitration differs from claims resolved through the judicial system. Plaintiff does not allege she was pressured to sign the agreement without any time to consider its provisions or to consult an outside attorney. Indeed, the Arbitration Agreement specifically advises that she "should consider consulting with another attorney about the advisability of making an agreement with mandatory arbitration requirements. (*See* Doc. No. 32-1 at 21). Plaintiff did not ask any questions about the

12

Arbitration Agreement, request additional time to review the Agreement or consult an outside attorney. Unlike the arbitration agreement at issue in *Taylor*, where only one party was bound to submit claims to arbitration, here the parties are mutually obligated to submitted covered claims to arbitration. 142 S.W.3d at 283. Under these circumstances, the Arbitration Agreement between the parties is not unconscionable.

**C. The Arbitration Agreement Was Not Obtained by Fraud**

Plaintiff argues that Defendant breached its fiduciary duty as her attorney to act in her best interest, and that because the Arbitration Agreement was not in her best interest, it was fraudulently induced. (Doc. No. 38 at 22). Plaintiff also claims that Defendant's failure to explain the Arbitration Agreement before she signed it amounts to fraudulent inducement.

In Tennessee, a party asserting fraud in the inducement to contract must establish the following: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for the truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance." *Lamb v. MegaFlight, Inc*., 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000). Plaintiff has not made any allegations, let alone provided any evidence, to support her allegation of fraudulent inducement. Accordingly, the Court finds that the Arbitration Agreement is not void for fraud.

## IV. CONCLUSION

For the reasons stated, the Court finds that Plaintiff has not raised a genuine issue of material fact regarding the validity of the arbitration agreement. Accordingly, the Motion to Stay and Compel Arbitration (Doc. No. 30) will be **GRANTED**. *Lehman Bros.*, 394 F.3d at 451 (where a party establishes that there is a valid agreement to arbitrate the dispute, the Court must grant the motion to compel arbitration). In light of this ruling, the Court will not address the merits of Plaintiff's underlying claims. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE